IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 14-cv-01227-MJW

JUANITA ANN PEREZ,

Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

Defendant.

---

## OPINION AND ORDER

---

**MICHAEL J. WATANABE**
**United States Magistrate Judge**

The government determined that Juanita Perez is not disabled for purposes of

Social Security Disability Insurance and Supplemental Security Income.  Perez has

asked this Court either to reverse that decision or to remand for further hearing.

The Court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3).  Both

parties have agreed to have this case decided by a U.S. Magistrate Judge under 28

U.S.C. § 636(c).  The Court hereby REMANDS for further hearing.

## Background

Perez suffers from chronic back pain and hasn't worked since 2005.  This

appears to be her second attempt at disability benefits; the first attempt was denied in

early June 2010, and this second attempt asserts a disability onset date of June 23,

2010.

The record in this case includes:

2

- Several years of consistent complaints about back pain to Perez's primary care providers—first at the Estes Street Clinic from June 2009 through September 2010, then at the West Alameda Medical Center from February 2011 through the close of evidence in this case;

- MRI testing and epidural and facet-block injections at Advanced Medical Imaging, from March 2010 through the close of evidence in this case;

- Unrelated records from a trip to the emergency room in September 2012;

- Perez's written questionnaires from her application for disability benefits;

- A consultative examination ordered by the state agency, along with a couple residual functional capacity (RFC) evaluations by state-agency doctors who did not examine Perez; and

- Hearing testimony from Perez and a vocational expert.

The ALJ concluded that Perez had severe limitations due to lumbar spine degenerative osteoarthritis.  But there was very little objective evidence on the intensity, persistence, and limiting effects of Perez's symptoms.  The only evidence shining any real light on the issue was the consultative examination and Perez's own testimony.  As a result, the case turned largely on the ALJ's assessment of Perez's credibility.  The ALJ found her statements not credible, came to the best findings he could as to her functional limitations based on the remaining evidence, and concluded that she could still perform her past relevant work—and therefore that she was not entitled to disability benefits.

3

**Analysis**

Perez raises four arguments on appeal.  One of those arguments—the ALJ's

credibility analysis—is sufficient on its own to warrant remand.  The Court therefore

declines to address the others.

The Court reviews the ALJ's decision to determine whether the factual findings

are supported by substantial evidence and whether the correct legal standards were

applied.  *See Pisciotta v. Astrue,* 500 F.3d 1074, 1075 (10th Cir. 2007).  "Substantial

evidence is such evidence as a reasonable mind might accept as adequate to support a

conclusion.  It requires more than a scintilla, but less than a preponderance."  *Raymond*

*v. Astrue*, 621 F.3d 1269, 1271–72 (10th Cir. 2009) (internal quotation marks omitted).

The Court "should, indeed must, exercise common sense" and "cannot insist on

technical perfection."  *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012).

The Court cannot reweigh the evidence or its credibility.  *Lax v. Astrue*, 489 F.3d 1080,

1084 (10th Cir. 2007).

"Credibility determinations are peculiarly the province of the finder of fact, and

[the Court] will not upset such determinations when supported by substantial evidence."

*Wilson v. Astrue,* 602 F.3d 1136, 1140 (10th Cir. 2010) (internal quotation marks

omitted).  When evaluating a claimant's subjective statements regarding pain, an ALJ

should consider factors such as:

> the levels of medication and their effectiveness, the extensiveness of the
> attempts (medical or nonmedical) to obtain relief, the frequency of medical
> contacts, the nature of daily activities, subjective measures of credibility
> that are peculiarly within the judgment of the ALJ, the motivation of and
> relationship between the claimant and other witnesses, and the

4

> consistency or compatibility of nonmedical testimony with objective
> medical evidence.

*Id.* at 1145 (internal quotation marks omitted); *see also Evaluation of Symptoms in*

*Disability Claims: Assessing the Credibility of an Individual's Statements*, SSR 96-7P,

1996 WL 374186 (July 2, 1996).   An ALJ is not required to address each factor in his

decision.   *See Qualls v. Apfel,* 206 F.3d 1368, 1372 (10th Cir. 2000) (observing that

credibility assessment does not require "formalistic factor-by-factor recitation of the

evidence" but instead requires reference to specific evidence the ALJ does rely on).

That said, an ALJ's credibility finding "should be closely and affirmatively linked to

substantial evidence and not just a conclusion in the guise of findings."   *Wilson,* 602

F.3d at 1140 (internal quotation marks omitted).

Here, the ALJ rested his credibility determination on two factors: (1) purported

inconsistencies between Perez's testimony and the objective medical evidence, and (2)

purported exaggerations in Perez's testimony.   The ALJ tied his conclusions to specific

evidence, highlighting several purported examples of each of these two factors.

However, this Court finds that the ALJ's examples are all flawed.   Where the ALJ points

to a purported inconsistency or exaggeration in Perez's testimony, the testimony isn't, in

fact, inconsistent with anything.

The ALJ's entire credibility analysis is as follows:

> One factor to consider in evaluating the credibility of the assertions of a
> witness is whether that person's evidence is inconsistent with or
> contradicted by other evidence in the record.   I have considered this factor
> and I find that it is present in this case.   The claimant has given evidence
> that is contradicted by or inconsistent with other evidence.   The following
> examples are illustrative.

The claimant has given inconsistent evidence about having a limited ability to lift.  During the hearing, the claimant testified that the maximum amount of weight she is able to lift at one time is 5 pounds.  The claimant asserted that this has been the case since June 2010.  However, prior to the hearing, in April 2011, the claimant reported that she was able to lift up to 20 pounds, i.e., four times heavier than the weight asserted.

The claimant has also given inconsistent evidence about having a limited ability to walk.  During the hearing, the claimant testified that the maximum amount of distance she is able to walk at one time is ½ block before the pain and other symptoms become so bad that she must stop and rest. The claimant also asserted that this has been the case since June 2010. However, prior to the hearing, in April 2011, the claimant reported that she is able to walk 1 ½ blocks, i.e., three times further than asserted.

The claimant has given inconsistent evidence about medication compliance.  During the hearing, the claimant testified that she has always taken all medications as prescribed.  However, evidence in the record indicates possible medication non-compliance.  For example, the claimant reported that she "lost" her medications.  The claimant has also given inconsistent evidence about the extent of her smoking dependence. During one 30 day period, for example, the claimant told her doctor during three difference appointments that she smoked ¼ pack per day, ½ pack per day and 1 pack per day.

The claimant has given inconsistent evidence about why she does not work.  She testified during the hearing that her physical problems keep her from working.  However, the claimant told her treating doctor that she doesn't work "because she is taking care of 4 grandchildren" while their mother is away.  This activity indicates significant physical capacities and renders her allegations less credible.

Another factor affecting the credibility of a witness' allegations is whether that person's evidence has either exaggerated the facts or has magnified the claimant's symptoms.  I have considered this factor and find it present here, for the claimant has given such evidence in this case.  For example, the claimant testified during the hearing that she has used a cane all day, every day since June 2010.  However, the medical records do not support this assertion.  There is no report by any health care professional in any of the claimant's medical records during that period that the claimant brought a cane to any appointment.  Moreover, the claimant did not bring a cane with her to the consultative examination.  The claimant has understated her ability to travel.  The claimant testified during the hearing that the same conditions that prevent her from working at any full time job have

also prevented her from traveling.  However, the claimant reported to her
health care professional that she had been traveling on the bus.

(AR 56-57 (internal citations to the record omitted).)

The ALJ begins by finding that Perez's December 2012 hearing testimony was
that she could lift no more than 5 pounds, while her April 2011 questionnaire stated that
she could lift 20 pounds.  But this mischaracterizes both sets of testimony.  April 2011,
she wrote "10 lbs to 20 lbs at the most"—indicating a range of uncertainty.  (AR 279.)  In
December 2012, she testified as follows:

> Q   And what about lifting.  Are you able to give any estimate as to the
> maximum number --
>
> A   Maybe 5, 10 pounds.
>
> Q   -- of the pounds you're able to lift?
>
> A   Maybe five.
>
> Q   Five or 10?
>
> A   I don't know.  My grandson's little.  He's three.  And I can't even lift
> him.  He has to crawl on my lap.
>
> Q   So 5 pounds would be –
>
> A   Probably the minimum.
>
> Q   You mean minimum or maximum?
>
> A   Maximum.
>
> Q   Okay.  And that's been the case since June of 2010 at least?
>
> A   Yes.

(AR 83.)  This is equivocal, confused testimony, clearly intended to be a rough estimate.

And both sets of statements give a range of estimates that includes ten pounds—ten on

the low-end in April 2011, and ten on the high-end in December 2012.  It is not the case,

as the ALJ concluded, that the April 2011 estimate is "four times heavier" than the December 2012 estimate.

Next, the ALJ states that her estimate of how far she can walk changed by a factor of three between April 2011 and December 2012.  In April 2011, she stated that she could walk a block and a half before resting.  (AR 279.)  In December 2012, she testified as follows, in answering the ALJ's questions:

> Q   Well are you able to give any estimate as to how far you can walk before you have to stop and rest?
>
> A   A half a block.
>
> Q   And that's been the case for how long?
>
> A   Since 2010.

(AR 83.)  And she testified as follows, in answering her counsel's questions:

> Q   Okay.  You wrote in that report that you could walk about a block and a half.  Now you just told the judge you could walk about a half a block.  Should I deduct from that that your walking has gotten worse?
>
> A   Yes.
>
> Q   Okay.  And that's been since June of 2010.
>
> A   Yes.

(AR 87–88.)  Perez did not testify that she has been limited to walking a half-block since 2010—her answers to the ALJ's questions can be fairly construed as saying that, but her answers are ambiguous, and her later answers clarified that her testimony was to the contrary.   It's true that the ALJ could discount the latter testimony as being elicited by leading questions.  But the ALJ didn't discount the testimony; he simply ignored it and characterized Perez's testimony as something it wasn't.

8

If these slanted characterizations of Perez's testimony were the only flaws in the ALJ's credibility analysis, they might merely be inferences of malingering, justifiable in light of the other evidence.  But the rest of the ALJ's analysis is either similarly overstated, or flat-out wrong.  For example, the next fact relied upon by the ALJ is:

> The claimant has given inconsistent evidence about medication compliance.  During the hearing, the claimant testified that she has always taken all medications as prescribed.  However, evidence in the record indicates possible medication non-compliance.  For example, the claimant reported that she "lost" her medications.

(AR 57.)  It is true that the claimant reported to her primary care provider that she lost her medication, but in the same breath she also reported that she refilled it at the pharmacy and, thus, needed a prescription for further refills.  (AR 334.)  There's no indication that Perez ever missed a prescribed dosage—and it therefore does not support an inference of "possible medication non-compliance."  Next, the ALJ notes that Perez's estimate of how much she smoked varied each time she saw her doctor—but this has no relevance at all to her claimed disability, and since smoking habits often do vary, this inconsistency shines very little light on Perez's character for truthfulness. After that, the ALJ notes that Perez once told a doctor she didn't work because she was caring for her grandkids, which would be inconsistent with her current position that she doesn't work because of her disability.  But she made that statement in July 2009— almost a full year before the alleged onset of disability at issue in this case.  (AR 333.) It is not in any way inconsistent with a statement that, as of June 2010, she doesn't work due to back pain.  Next, the ALJ says that "the claimant testified during the hearing that she has used a cane all day, every day since June 2010," while the medical

evidence is to the contrary.  But Perez testified to no such thing; during the ALJ's

questioning, in December 2012, Perez specifically testified that she had been using the

cane for a year, since mid-2011.  (AR 80.)  She later testified, in response to her

attorney's questions, that she had used the crane sporadically before then but began

using it more regularly after a serious fall.  (AR 89.)  As the ALJ noted, the consultative

examiner remarked that Perez did not use a cane on the date of the examination—but

that was in April 2011, before the time when Perez testified she began using the cane

more regularly.  There are, in fact, no medical records from mid-2011 or later making

any mention of the presence or absence of assistive walking devices—and as a result,

Perez's testimony on the point is not contrary to any objective evidence.  Finally, the

ALJ points out that Perez testified that her back pain prohibits her from traveling, while

the record suggests that she rides the bus (or did so at least once).  But this is silly:

most people do not use the word "traveling" as synonymous with "commuting," and in

any event, the bus-riding incident occurred in July 2009, nearly a year before the

alleged onset of disability in this case.  (AR 334.)

In sum, almost every single one of the evidentiary foundations for the ALJ's

credibility analysis is overstated, taken out of context, irrelevant, or simply wrong.  An

ALJ's credibility analysis is subject to harmless-error standards, but that cannot save it

here.  First, this is not a case where, despite a handful of errors, "the balance of the

ALJ's credibility analysis is supported by substantial evidence in the record."  *Branum v.*

*Barnhart*, 385 F.3d 1268, 1274 (10th Cir. 2004).  It may well be that, upon proper

10

analysis, Perez's testimony is non-credible.[1]  But nothing in the credibility analysis

provided by the ALJ is supported by the record.  As result, the credibility analysis as a

whole lacks substantial evidence.  Second, there is no dispute that the ALJ's vocational

analysis would be wrong if he had accepted Perez's testimony.  (Docket No. 21, p.13 (if

Dr. Hoffman's opinion were adopted, it would have rendered Plaintiff unable to perform

her past relevant work); AR 100.)  The case must thus be remanded for further hearing.

## Conclusion

For the reasons set forth above, the Commissioner's decision is REMANDED to

the Commissioner for a new credibility determination, including (if the ALJ deems it

appropriate) a new hearing or newly developed evidence.  The Plaintiff is awarded her

costs, to be taxed by the Clerk of Court pursuant to Fed. R. Civ. P. 54(d)(1).

Dated this 14th day of May, 2015.

BY THE COURT:

*/s/ Michael J. Watanabe*
MICHAEL J. WATANABE
United States Magistrate Judge

---

[1] For example, Perez denied having ever smoked or used recreational drugs when she spoke to the consultative examiner—statements made to a government agents that are clearly shown to be dishonest by the objective medical evidence.  (AR 347, 338, 325.) And when Perez went to the ER in September 2012, the triage nurse noted no limits to her ranges of motion and a steady gait.  (AR 377–78.)  But the ALJ did not include this evidence in his credibility analysis, and the Court may not substitute its own post-hoc reasoning.  *Haga v. Astrue*, 482 F.3d 1205, 1207–08 (10th Cir. 2007).